**From:** Jennifer Woulfe
**To:** Christopher Saracino
**Cc:** Kimberly Bradley; Elizabeth Bini; John Kemppainen; Allison Thompson
**Subject:** RE: Sendlein v. Costco
**Date:** Friday, August 21, 2026 3:45:10 PM
**Attachments:** image001.png
Objections to Costcto Corporate Designee Topics.docx

Chris,

Please see the attached with thoughts on each topic. Although everything is noted under "Objection," a lot contained herein is not actually an objection but rather references back to other topics or the proposed topics I sent over. I just felt it was easier to designate everything under that title. I hope this helps.

Enjoy your weekend.

Jenny

**From:** Christopher Saracino <csaracino@stlinjurylaw.com>
**Sent:** Friday, August 21, 2026 11:37 AM
**To:** Jennifer Woulfe <JWoulfe@gallowaylawfirm.com>
**Cc:** Kimberly Bradley <KBradley@gallowaylawfirm.com>; Elizabeth Bini <EBini@gallowaylawfirm.com>; John Kemppainen <JKemppainen@gallowaylawfirm.com>; Allison Thompson <Allison.Thompson@gallowaylawfirm.com>
**Subject:** RE: Sendlein v. Costco

***** External Sender - Please Exercise Caution*****

Hey Jennifer:

This seems very limiting in its intention. I believe my client has the right to conduct discovery just like in every other case, with an eye towards "reasonably calculated to lead to the discovery of admissible evidence."

I am reattaching the original NOVD. Would you mind just telling me what particular topics are of concern for Costco and I can consider limiting them or withdrawing them. I previously agreed that we are only discussing the outside of the store, in the relevant area, and limited other designs to "local" stores as to not burden your client. I would appreciate some more clarity on where these concerns by Costco are coming from in particular topics.

CHRISTOPHER S. SARACINO, JR.
GOLDBLATT + SINGER
8182 Maryland Avenue, Suite 801

Exhibit F

ST. LOUIS, MO 63105
P: (314) 231-4100
F: (314) 241-5078
D: (314) -655-9074
csaracino@stlinjurylaw.com
www.stlinjurylaw.com

*This e-mail message from the law firm of Goldblatt & Singer is intended only for named recipients. It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a name recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please notify us immediately at 314.231.4100 that you have received this message in error, and delete the message.*

---

**From:** Jennifer Woulfe <JWoulfe@gallowaylawfirm.com>
**Sent:** Friday, August 21, 2026 9:59 AM
**To:** Christopher Saracino <csaracino@stlinjurylaw.com>
**Cc:** Kimberly Bradley <KBradley@gallowaylawfirm.com>; Elizabeth Bini <EBini@gallowaylawfirm.com>; John Kemppainen <JKemppainen@gallowaylawfirm.com>; Allison Thompson <Allison.Thompson@gallowaylawfirm.com>
**Subject:** RE: Sendlein v. Costco

Chris,

Per our discussion, I am attaching a draft of corporate designee topics in which I have tried to take into consideration the areas you are interested in, based on your list of topics as well as our conversations, as well as the concerns raised by Costco. Topics 8-11 would likely be addressed by the local warehouse manager who we are trying to set Sept. 2-4. As discussed, I am attaching this to the latest email I could find regarding our discussions on this topic, although I know we also had a call on August 3.

Let me know your thoughts on the attached. I will have to run anything we put together by Costco for final approval, but I believe I have addressed most of their concerns here. I appreciate your time today.

Thanks,
Jenny

**Jennifer L. Woulfe, Director**
222 S. Central Avenue, Suite 1110
St. Louis, MO 63105
O: 314-725-0525 | F: 314-725-7150
D: 314-656-6880
JWoulfe@gallowaylawfirm.com

GALLOWAY
Galloway Johnson Tompkins Burr & Smith
AL | FL | GA | LA | MO | MS | TX
GallowayLawFirm.com

THIS MAY CONTAIN CONFIDENTIAL ATTORNEY-CLIENT OR PRIVILEGED COMMUNICATIONS. PLEASE DO NOT FORWARD WITHOUT SPECIFIC PERMISSION.

---

**From:** Christopher Saracino <csaracino@stlinjurylaw.com>
**Sent:** Thursday, July 30, 2026 1:59 PM
**To:** Jennifer Woulfe <JWoulfe@gallowaylawfirm.com>
**Cc:** Kimberly Bradley <KBradley@gallowaylawfirm.com>; Elizabeth Bini <EBini@gallowaylawfirm.com>; John Kemppainen <JKemppainen@gallowaylawfirm.com>; Allison Thompson <Allison.Thompson@gallowaylawfirm.com>
**Subject:** Re: Sendlein v. Costco

***** External Sender - Please Exercise Caution*****

Hi Jennifer, Monday morning would work. Go ahead and send a calendar invite for whatever time works best for you.

Thanks,

Sent from my iPhone

> On Jul 30, 2026, at 12:06 PM, Jennifer Woulfe <JWoulfe@gallowaylawfirm.com> wrote:
>
> Hi Chris,
>
> Wanted to follow-up regarding a call to hammer out these issues. Unfortunately, the week got away with me, and I am getting ready to go on vacation. I could talk after 3 today or sometime Monday morning. I could also probably make another morning next week work, although I will have to make sure it does not conflict with any vacation plans.
>
> Thanks,
> Jenny

**Jennifer L. Woulfe, Director**
222 S. Central Avenue, Suite 1110
St. Louis, MO 63105
O: 314-725-0525 | F: 314-725-7150
D: 314-656-6880
JWoulfe@gallowaylawfirm.com

<gallowayemaillogo_0e939988-64b3-42f5-9838-cd396c18e3c6.png>

THIS MAY CONTAIN CONFIDENTIAL ATTORNEY-CLIENT OR PRIVILEGED COMMUNICATIONS. PLEASE DO NOT FORWARD WITHOUT SPECIFIC PERMISSION.

**From:** Christopher Saracino <csaracino@stlinjurylaw.com>
**Sent:** Wednesday, July 22, 2026 2:11 PM
**To:** Jennifer Woulfe <JWoulfe@gallowaylawfirm.com>
**Cc:** Kimberly Bradley <KBradley@gallowaylawfirm.com>; Elizabeth Bini <EBini@gallowaylawfirm.com>; John Kemppainen <JKemppainen@gallowaylawfirm.com>; Allison Thompson <Allison.Thompson@gallowaylawfirm.com>
**Subject:** RE: Sendlein v. Costco

***** External Sender - Please Exercise Caution*****

Jennifer:

I will follow this email up with a call. Wanted to give you my thoughts in writing first.

1. A lot of the topics reference parking spots at the storefront/storefront protection and hazards in pedestrian walkways/ADA accessible paths. However, this incident did not occur in a parking spot adjacent to the storefront, nor did it occur in a pedestrian walkway.

Potentially confusing language, however, below is a photo of the area which I understand was where the fall occurred. For example, the white slashed lines on the pavement are the walkways we are referring to. The storefront, as referred to in the topics, means the parking lot in front of the store. I don't intend to discuss topics inside of the store. The ADA accessible paths would be those surrounding the handicap spots in the parking lot.

<image002.png>

2. As far as standards, policies, etc., the topics do not have a defined time period. I assume we are talking about the standards as of the date of the incident?

Hard for me to confirm for you exactly what standards I am seeking. For example, if there were old design standards for parking spaces and those changed from the previous design to the one present when Ms. Sendlein fell, that would be important to know. If you want to provide some insight into this, I would be willing to work with you on this.

3. To the extent the topics ask about safety standards & maintenance generally, we need to limit these to the matters at issue in the pleadings – i.e., parking lots, trip hazards, etc.

I agree.

4. The original design of this parking lot was over 20 years ago and it was redone prior to the incident. Can we instead focus on the 2022 reno when the subject wheel stop was installed?
    1. As far as the renovation, we will speak to what we can, but as you know from our discovery answers, Costco hired and outside architect and contractor for the job

I think the change in 2022 is important. For example, if the previous design was different, it would be important to evaluate that design particularly with the parking space, parking block and Ballards in that area. What I am understanding you to say is that from the original design, it had not changed until 2022, so really should just be the old design and the new design of the parking spaces.

5. We need to discuss a limit on the topics regarding other stores. There are over 600 Costco warehouses nationwide, all built at different times and involving different topography. We can't reasonably speak to every single one.

Your position makes sense. I would imagine most of them are pretty uniform. We can discuss the alternate designs at different stores. I would say at a minimum it would be the Missouri stores and Metro East and other stores these architects worked on.

We need a reasonable time limitation on the prior incidents, complaints, etc. 10 years is a long time and I don't even think their record retention goes back that far

We can just limit it to their document retention at the time of the injury.

After you have been able to review this, we can have a call.

Thanks,

CHRISTOPHER S. SARACINO, JR.
GOLDBLATT + SINGER
8182 Maryland Avenue, Suite 801
ST. LOUIS, MO 63105
P: (314) 231-4100
F: (314) 241-5078
D: (314) -655-9074
csaracino@stlinjurylaw.com
www.stlinjurylaw.com

*This e-mail message from the law firm of Goldblatt & Singer is intended only for named recipients. It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a name recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please notify us immediately at 314.231.4100 that you have received this message in error, and delete the message.*

---

**From:** Jennifer Woulfe <JWoulfe@gallowaylawfirm.com>
**Sent:** Wednesday, July 15, 2026 9:38 AM
**To:** Christopher Saracino <csaracino@stlinjurylaw.com>
**Cc:** Kimberly Bradley <KBradley@gallowaylawfirm.com>; Elizabeth Bini <EBini@gallowaylawfirm.com>; John Kemppainen <JKemppainen@gallowaylawfirm.com>; Allison Thompson <Allison.Thompson@gallowaylawfirm.com>
**Subject:** Sendlein v. Costco

Hi Chris,

Do you have some time next week to discuss the scope of some of these corporate designee topics? So you are not going in blind, below are some of my initial thoughts:

1. A lot of the topics reference parking spots at the storefront/storefront protection and hazards in pedestrian walkways/ADA accessible paths. However, this incident did not occur in a parking spot adjacent to the storefront, nor did it occur in a pedestrian walkway.
2. As far as standards, policies, etc., the topics do not have a defined time period. I assume we are talking about the standards as of the date of the incident?

3. To the extent the topics ask about safety standards & maintenance generally, we need to limit these to the matters at issue in the pleadings – i.e., parking lots, trip hazards, etc.
4. The original design of this parking lot was over 20 years ago and it was redone prior to the incident. Can we instead focus on the 2022 reno when the subject wheel stop was installed?
    1. As far as the renovation, we will speak to what we can, but as you know from our discovery answers, Costco hired and outside architect and contractor for the job
5. We need to discuss a limit on the topics regarding other stores. There are over 600 Costco warehouses nationwide, all built at different times and involving different topography. We can't reasonably speak to every single one.
6. We need a reasonable time limitation on the prior incidents, complaints, etc. 10 years is a long time and I don't even think their record retention goes back that far.

Thanks,
Jenny

**Jennifer L. Woulfe, Director**
222 S. Central Avenue, Suite 1110
St. Louis, MO 63105
O: 314-725-0525 | F: 314-725-7150
D: 314-656-6880
JWoulfe@gallowaylawfirm.com

<image003.png>

THIS MAY CONTAIN CONFIDENTIAL ATTORNEY-CLIENT OR PRIVILEGED COMMUNICATIONS. PLEASE DO NOT FORWARD WITHOUT SPECIFIC PERMISSION.

**<u>PRELIMINARY OBJECTION</u>:** **There are 31 topics on this list which seems overly burdensome and not proportionate to the needs of this case considering this is a trip and fall on video and we do not really have a dispute on the design of the parking lot or what was present on the date of the incident. The question for an expert and ultimately a jury is going to be whether the wheel stop, considering its size, color, placement, proximity to a bollard, etc., constituted a dangerous condition or not. A lot of what is contained in these topics goes beyond that and/or goes at the same issue in a slightly different way. Many of these topics also seem more argumentative than simply listing a subject on which the corporate designee needs to testify. In my proposed topics, I tried to condense these down to the issues that you appear to be pursuing while keeping in mind the relevance to the case and the ability of a witness to be able to speak on all these things.**

**Definitions and Scope**

1. **Definitions and temporal scope.** The corporation's interpretation of terms used in the notice (e.g., "parking block," "wheel stop," "bollard," "storefront protection," "pedestrian walkway," "conspicuity," "trip hazard"), and the time period for which Costco can reasonably provide information about the subject store's parking lot design, installation, inspection, and modification history.

**<u>OBJECTION</u>:** **We previously discussed my issues with including within the scope "storefront protection" and "pedestrian walkway" in that this parking spot was not at the storefront, the wheel stop was not providing any type of storefront protection, and the wheel stop was not in a pedestrian walkway. However, I kept these terms in the proposed topics based on our conversation that you intended to still use them, adding the qualifiers "at/near".**

**We also discussed the issue with going back to the full history of the parking lot's design, installation, inspection, and history. Regardless of how far back Costco can go, there is little relevance to what was there when this store was built 20 years ago or the installations & inspections since then. Even limiting this to the wheel stops and bollards does not solve this issue and is a lot of information to prep someone on. My original thought was to limit prior design/installation to talking about the job installing the subject wheel stop in 2022. Based on our conversation, I understood that your question was whether Costco had previously had a set up where they only used a bollard or a wheel stop for the accessible spaces instead of both, as it was at the time of the incident. Thus, I kept that issue within the scope of my proposed topics.**

2. **Corporate structure and decision-making.** Identification of the Costco departments, committees, and personnel responsible for parking lot design, safety standards, risk management, and facilities maintenance during the relevant period, including how decisions and standards are communicated from corporate to individual warehouses.

**OBJECTION**: **Again, this topic is very broad and goes beyond the proportionate needs of this case, which concerns parking lot design. I kept within my proposed topics identification of those persons and positions with responsibility over the selection/approval of what you allege was an issue in this case, i.e., the wheel stop. This is not a claim of negligent maintenance, so I do not see how that is relevant. "Safety standards" is a broad category and covers lots of different areas and roles, to include things like food safety, employee safety/OSHA, security, etc. Risk management is getting into things like claims handling and insurance, which is also not pertinent to this case. Also, as we previously discussed, "the relevant period" is not defined, so my proposal set as the time period for this issue as being when the subject wheel stop was installed.**

---

**Design Standards, Policies, and Alternatives – all of these need a time limitation**

3. **Corporate standards for parking lot design.** Costco's written and unwritten policies, procedures, design standards, guidelines, manuals, and criteria governing parking lot layout, pedestrian walkways, accessible routes, storefront protection, and use of parking blocks/wheel stops at its warehouses.

**OBJECTION**: **I think my proposed topic 3a adequately addresses this issue as it gets to the heart of the matter, being the use wheel stops in parking lots in relation to these various design elements. It also addresses the time issue by identifying two time periods to focus on – when the wheel stop was installed (2022) and when the incident occurred (Dec. 2023).**

4. **Use of parking blocks versus bollards and curbs.** Costco's corporate policies, engineering analyses, or risk assessments regarding when to use:
   - Parking blocks/wheel stops.
   - Vertical bollards or posts.
   - Raised curbs or other physical barriers. Including any comparison of safety, visibility, and trip-and-fall risk among these options

**OBJECTION**: **I think my proposed topics 3a & b adequately addresses this issue as they go to the heart of the matter (wheel stops) and also incorporate bollards in consideration of your issue with the use of both. Curbs involve sidewalks, and there are no sidewalks in the area of the**

**incident. "Other physical barriers" is broad and undefined and extends to things like walls, fences and other items that have nothing to do with this case. To the extent you are looking into analyses and risk assessments, that would be covered in proposed topic #5 which looks into evaluations of the use of wheel stops and the question here is whether Costco should have used a wheel stop as it was used in this case. I have suggested a 10 year period on such analyses, which I think is reasonable. The time limitation on policies and procedures is the same as above.**

5. **Conspicuity and color/marking standards.** Costco's standards, criteria, or guidelines for color, striping, painting, reflectivity, or other conspicuity measures for parking blocks/wheel stops and similar devices (e.g., whether blocks should be painted a contrasting or "warning" color versus left dark/black).

**OBJECTION**: **See proposed topic #3c and discussion above regarding timing. "Similar devices" is not defined, so I included bollards in #3c.**

6. **Standards for pedestrian walkways crossing parking stalls.** Costco's design criteria for situations where pedestrians cross in front of parked vehicles or over parking blocks, including any requirement or preference for:
   - Bollards instead of parking stalls in front of building entrances.
   - Clear sightlines and conspicuously marked walking paths.
   - Elimination of wheel stops in pedestrian travel paths to reduce trip hazards.

**OBJECTION**: **This topic is argumentative in that it is suggesting Plaintiff was walking in a pedestrian path, which she was not. She was walking in the space where the tops of two parking stalls meet. For reference, I have included a screenshot from Google Maps and circled the parking spot where Plaintiff was parked in red. The wheel stops are in the parking stall, not a walkway. To the extent you are referring to area pained with white, diagonal lines, this does not "cross" any parking stalls. Rather, it is adjacent to 4 different stalls as is required in order for them to require as accessible parking spaces under the ADA in that there is sufficient room for people with mobility issues (and in particular wheelchairs) to enter and exit a vehicle from at least one side without having to worry about the vehicle in the adjacent stall parking too closely.**



**Despite the issues laid out above, I think any questions regarding bollard/wheel stop placement and in particular in relation to pedestrian walkways is covered by proposed topics 3a & b.**

7. **Industry codes, guidelines, and best practices consulted.** The building codes, fire codes, local ordinances, ADA/accessible design guidelines, ASTM/ISO standards, or other industry guidance Costco considered or relied upon in designing and maintaining its parking lots and deciding to use parking blocks instead of bollards or curbs.

**OBJECTION:** **Discussing codes and guidelines relied upon throughout the country, without time limitation is extremely broad and not proportionate to the needs of this case. Alone, every municipality Costco has ever had a warehouse in is likely to have its own unique modifications to the standard building codes. Further, I do not think other building codes Costco may have used at some place and time is relevant to the question of any issues at this warehouse. The question is what codes, if any, it relied upon for the condition at issue under the pleadings. If there is a different or better code Costco could or should have used, your expert can speak to that. Also, as discussed, the entire parking lot involves a lot of consideration and goes beyond the matters relevant to this case. Thus, I have limited it to the wheel stop/accessible space layout at issue in proposed topic #1d.**

8. **Corporate risk management and loss prevention input.** The role of Costco's risk management, safety, legal, and insurance departments in approving, reviewing, or recommending:
   - Use of parking blocks.
   - The color, conspicuity, and placement of parking blocks.
   - Use of bollards or other alternative safety devices in front of store entrances.

**OBJECTION:** **Proposed Topic #4 discusses persons with responsibility over selection/approval of the use of wheel stops and/or bollards with the time limitations of installation of subject wheel stop and date of incident. To the extent those people include risk management and loss prevention, they would come under this topic.**

---

**Specific Store Parking Lot and Installation**

9. **Original design and construction of the subject parking lot.** The design process and plans for the subject store's parking lot, including:
   - Who designed it (internal staff vs. outside engineers/architects).
   - When it was constructed.
   - Design drawings and specifications showing parking blocks, bollards, curbs, pedestrian walkways, and storefront protection features.

**OBJECTION:** **See Objection at #1, *supra*, regarding testimony on the entire history of the parking lot.**

10. **Installation of the specific parking block involved.** The date, method, and contractor involved in installing the specific black parking block over which Plaintiff tripped, including:
    - Material composition and dimensions.
    - Whether it was anchored or loose.
    - Any specifications for color, painting, or reflectivity at installation.

**OBJECTION:** **Included at proposed topics #1a & b.**

11. **Changes or modifications to parking blocks and bollards.** Any subsequent changes to the parking lot layout, parking blocks, bollards, curbs, striping, signage, or lighting before Plaintiff's fall, and why Costco made or declined to make such changes.

**OBJECTION:** **See Objection at #1, *supra*, regarding the entire history of the parking lot and my attempt to narrow down to your issues at proposed topic #2 regarding the use of the wheel stops and bollards together versus one or the other.**

**Also, my impression is that lighting is not really the focus of the issues in this case. I believed we discussed on the phone how in both the photographs from the scene and the video of the incident, it is pretty clear that the parking lot is well lit. Lighting is touched on in a few of your topics, so I included proposed topic #7 on my list. However, it does not appear to be an area of focus, and I did not want to spend a lot of time and energy on a nonissue.**

12. **Walkway and storefront configuration at the time of the incident.** The configuration immediately before Plaintiff's fall of:
    - Parking stalls in front of or adjacent to the main entrance.
    - Pedestrian walkways leading to/from the entrance.
    - Any bollards, barriers, or protective devices intended to separate pedestrians from vehicles and to prevent trips or collisions.

**OBJECTION**: **This does not require corporate designee testimony. It is apparent from the plans we have produced, the video of the incident, photographs from the scene, and even Google Maps. We are not contesting that the scene was as it is shown in the video and on the ADA Site Upgrade plans.**

---

**Visibility, Conspicuity, and Hazard Recognition**

13. **Costco's evaluation of parking block visibility.** Costco's assessment (if any) of how visible and conspicuous the black parking block was to pedestrians approaching, exiting, or walking across the area, including:
    - Internal evaluations or site audits.
    - Use of contrasting colors, striping, or markings in other Costco locations.
    - Any recognition that dark or black wheel stops are less visible and pose an elevated trip hazard.

**OBJECTION**: **Proposed topic #5 encompasses analyses, assessments, studies on wheel stops for 10 years prior to the date of the incident (excepting any related to litigation to which we would claim work product privilege). Proposed topic #6 covers wheel stops at all other Costcos in the metro area at the two relevant time points (wheel stop installation & incident). The final bullet point is argumentative and a conclusory statement of your position at trial. Also, the wheel stop was not just black – it had yellow striping. Second, it does not indicate what the wheel stop was less visible than or posed an elevated trip hazard to. I am confident you will still ask this question, or something similar, to all my witnesses, I will object, and they will provide an answer subject to my objection.**

14. **Lighting and environmental conditions considerations.** Costco's standards for parking lot and walkway lighting as they relate to visibility of parking blocks and similar obstacles, and what lighting existed in the area of Plaintiff's fall at the time.

**OBJECTION**: **See comments in Objection to #11 above regarding lighting and proposed topic #7 on lighting.**

15. **Identification of trip hazards in walkways.** How Costco identifies, classifies, and mitigates trip hazards in customer walking paths, including whether wheel stops/parking blocks located where customers walk are

recognized as hazards and what measures are required (e.g., removal, repainting, reconfiguration).

**<u>OBJECTION</u>:** **This topic is argumentative in trying to describe this wheel stop as being in a walking path, which it was not, and that it was a tripping hazard, which we do not consider it to be. The general topics of inspection for, identification of, and mitigation of trip hazards is covered in proposed topic #11a & b. I don't really think these matters are relevant since this is a design case, not a failure to inspect or maintain case. However, I have tried to include as many of your proposed areas of inquiry as possible.**

---

**Comparison With Other Designs and Stores**

16. **Alternative designs considered for this store.** Any alternative parking lot layouts, storefront protection schemes, or pedestrian routing designs that were considered for this store, including:
    - Designs using bollards instead of parking stalls in front of the entrance.
    - Designs eliminating wheel stops in pedestrian travel paths.
    - Designs relocating parking away from main walkways.

**<u>OBJECTION</u>:** **Alternative considerations to the bollard and wheel stop are covered in 1c. The wheel stops are not in pedestrian travel paths, so there is not an "alternate" design with this feature – that is the design. The final bullet point does not really make sense to me. Plaintiff was walking to her car door, and people have to be able to walk to her cars. I would not consider the area adjacent to the parking space a "main" walkway. As explained above, it is a necessary ADA feature, and in any event, it's not where the wheel stop was located.**

17. **Practices at other Costco locations.** How parking blocks and bollards are used at other Costco warehouses, including:
    - Whether other stores use painted/contrasting wheel stops.
    - Whether other stores prohibit parking stalls directly in front of entrances and instead use bollards or barriers.
    - Any corporate initiatives or pilot programs to standardize safer designs.

**<u>OBJECTION</u>:** **See proposed topic #6 regarding uses of wheel stops & bollards at the other locations in the metro area at the time of the installation of the subject wheel stop and time of the incident.**

18. **Comparison to industry practice.** Costco's awareness of, and comparison to, other large retailers' parking lot designs (e.g., using bollards and eliminating stalls directly in front of the entrance to reduce accidents), and any internal discussion of adopting similar practices.

**OBJECTION:** **The parking stall was not "directly in front of the entrance." Proposed topic #1c includes considerations of alternates to the wheel stop & bollard used at this store and #1d asks about consideration of industry guidance. This provides you with the information on whether Costco considered and rejected other alternatives. If you want to point at the design used by other retailers and argue it was better, that is something your expert can do.**

---

**Prior Incidents, Complaints, and Knowledge**

19. **Similar trip-and-fall incidents at this store.** All incidents, claims, lawsuits, or internal reports involving customers or employees tripping over parking blocks/wheel stops, curbs, or similar devices in the subject store's parking lot for a defined period (e.g., 10 years) prior to Plaintiff's incident.

**OBJECTION:** **Proposed topic #9 encompasses claims of trips and falls at this warehouse over wheel stops, bollards, and other devices used to prevent vehicle traffic across parking stalls for 5 years prior to the incident.**

20. **Similar incidents at other Costco locations.** All known incidents, claims, lawsuits, or internal reports at other Costco stores involving trip-and-fall events on parking blocks/wheel stops, especially in front of store entrances or within pedestrian walkways.

**OBJECTION:** **Proposed topic #9 encompasses claims of trips and falls at the 4 other locations in the St. Louis area over wheel stops, bollards, and other devices used to prevent vehicle traffic across parking stalls for 5 years prior to the incident.**

21. **Customer and employee complaints.** Customer and employee complaints or safety observations about parking blocks, wheel stops, and related trip hazards at the subject store, including how Costco handled or responded to those complaints (repair, repainting, redesign, or no action).

**OBJECTION:** **"Related trip hazards" is vague and could be very broad. Also, this topic is not defined by time. Proposed topic #10 would give complaints with respect to wheel stops and bollards in the accessible spaces at the 5 St. Louis area stores for 5 years.**

22. **Corporate response to prior incidents.** Any changes in Costco's policies, design standards, training, or maintenance practices implemented as a result of prior incidents or complaints involving parking blocks, wheel stops, or bollards.

**OBJECTION:** **I appear to have missed this one when doing my list. To put some limits on this one, how does "changes in to Costco policies and design**

**standards with respect to its use of wheel stops and/or bollards in parking lots in the 5 years prior to the subject incident in response to an incident or complaint?"**

---

**Inspection, Maintenance, and Warnings**

23. **Inspection and maintenance protocols.** Costco's protocols for inspecting, maintaining, repairing, or replacing parking blocks and related striping, including frequency of inspections, responsible personnel, checklists used, and actions required when hazards or visibility problems are observed.

**<u>OBJECTION</u>:** **This is an allegation of negligent design – not that there was anything broken, chipped, or otherwise damaged with the wheel stop. As such, I don't really think it is relevant. However, policies for inspection, maintenance, repair, and replacement of wheel stops in effect on date of installation and the subject fall is included at proposed topic #3d.**

24. **Condition of the subject parking block.** The inspection, maintenance, and repair history of the specific black parking block involved in Plaintiff's fall, including any records of it being loose, damaged, chipped, or otherwise altered, and any repainting or failure to paint.

**<u>OBJECTION</u>:** **This is an allegation of negligent design – not that there was anything broken, chipped, or otherwise damaged with the wheel stop. As such, I don't really think it is relevant. However, these issues are included in topic #1e.**

25. **Warnings, signage, and customer guidance.** Costco's policies regarding warnings, signage, or markings to alert customers to the presence of parking blocks, curbs, or other changes in elevation, and what warnings (if any) existed in the area of Plaintiff's fall.

**<u>OBJECTION</u>:** **Plaintiff tripped over a wheel stop. Therefore, its markings and warnings are what are relevant. Not the markings or warnings regarding curbs or other conditions that Plaintiff did not trip on. Obviously, you are not going to have a sign about a wheel stop, and I think policies regarding warnings of its presence are covered in proposed topic #3c regarding markings and conspicuity.**

---

**Cost, Feasibility, and Risk–Benefit Analysis**

26. **Cost and feasibility of safer alternatives.** Costco's analysis of the cost, practicality, and anticipated safety benefits of using bollards, curbs, or redesigned walkways instead of parking blocks in areas where customers walk, including any budgetary or operational reasons for choosing parking blocks over bollards.

**OBJECTION:** **Proposed topic #5 is analyses, assessments, etc. of the use of wheel stops for 10 years prior to the incident, excepting privileged analyses related to litigation. We need some type of time limitation, and I feel that is reasonable. Otherwise, I feel like proposed topic #5 has this covered.**

27. **Corporate risk–benefit balancing.** Any corporate evaluations, risk assessments, or cost-benefit analyses weighing the risk of customer trip-and-fall incidents against the perceived benefits of the chosen parking lot design at the subject store.

**OBJECTION:** **See objection to #26 above.**

---

**Training and Implementation**

28. **Training of store personnel on parking lot safety.** Training provided to managers, supervisors, and employees regarding:
    - Identifying and reporting trip hazards.
    - The safety function and risks associated with parking blocks/wheel stops and bollards.
    - Implementing corporate parking lot safety standards at the store level.

**OBJECTION:** **Proposed topics #11a & b are policies, procedures & training on identification, inspection, and mitigation of trip hazards in parking lots at the subject store. As discussed, I have added a time constraint of the time of the subject incident. As discussed above, I don't think this is relevant since this is a design case, but I think we have this topic covered.**

29. **Implementation and oversight of standards at the store.** How Costco ensures that corporate parking lot design and safety standards are implemented and enforced at the subject store, including audits, safety inspections, and follow-up on identified issues.

**OBJECTION:** **Proposed topic #11c is on safety audits at the subject store in effect as of the subject incident. Again, although I do not think this is relevant to a design case, I think it is covered.**

---

**Litigation-Specific Knowledge and Preservation**

30. **Incident investigation and post-incident changes.** Costco's investigation of Plaintiff's incident, including:
    - Who conducted it and when.
    - What conclusions were reached about the cause and the role of the parking block.
    - Any changes made to the parking lot, parking blocks, bollards, lighting, or signage after the incident, and the reasons for those changes.

**OBJECTION:** **The only investigations into this incident have been completed by or at the direction of Gallagher Bassett and defense counsel. As such, we maintain our work product privilege as to those investigations and their conclusions. Thus, there would be nothing for a corporate designee to testify to regarding this topic. If you want to keep it, it would just be my objection as to privilege and instruction not to answer.**

**Last I checked (within the past couple months), this wheel stop and bollard are the same, and I have no reason to think that is changed. Even if there had been a change, I do not think that would be relevant, and if a change had been in response to this incident, it would be an inadmissible subsequent remedial measure.**

31. **Document retention and ESI related to parking lot design.** Costco's document and electronic data retention policies as they relate to parking lot design, safety inspections, incident reports, emails, and other records relevant to the subject incident, including steps taken to preserve such materials after notice of Plaintiff's claim.

**OBJECTION:** **Proposed topic #8 includes document retention for parking lot design. As this is a design and not failure to inspect case, I do not think Costco's document retention on safety inspection is relevant. Further, since we claim privilege with respect to the investigation of this incident, I do not think the document retention policy on those materials matters. You know we have photographs and the store video, which we have produced, and an incident report, for which we have maintained a privilege.**